Good morning, Your Honors. Mark Plaisance on behalf of Mr. Moore. All right, sir. You're up. I think I reserved five minutes when I sent my seat in, although I don't think it'll be necessary to take that long. The issue to me in this case is really not as complicated as it seems. I don't dispute that 2K2.1, and to make these easy, I'll say K, A, and X, if that's okay with the court. K applies. The court properly applied that in determining Mr. Moore's sentence. A does not apply. The cross-reference to A should not apply, since the object of the crime was an attempted Hobbs Act robbery, which is not a crime of violence, and does not constitute attempted murder. And as you can tell from the briefs, there's not a lot of cases that have actually addressed specifically, or at least at the time of the writing of the briefs. When you make this argument, just to get to the chase, because that's sentencing the lawyer for Daryl and your client. Both of you were saying, this is a fact dispute. We admit they were recruited, but we don't admit that they came intending to kill anyone. So, is your argument now, that Judge LaMelle's fact determination that they had that state of mind, is clear error? Or is your argument a legal one, that the other crime the gun is connected to has to be a crime that's charged in the indictment, here, count one, Hobbs robbery? Or is it something else? I'd like to take both, because I think I can. Okay, but I just want to be clear. Those are your two arguments? Yes, sir. One is clear error determining scienter? No, ma'am, that's right. Yes, yes. And the other one is, and very specifically, the legal argument is, the other offense has to be something the government actually charged, either robbery count one or drugs count two. Can't be murder uncharged. Correct. I was going to argue both of those. Okay. This morning. But I guess the difficulty with the second is, do you have a case that says, it's got to be a charge, other offense has to mean charge, yes or no? I don't. That's a problem. Of course. Okay. It doesn't say it does either, necessarily. I didn't find one. Maybe there are cases that say it doesn't have to be charged. We get into this whole relevant conduct type situation. Relevant conduct? Yeah, and that becomes, counsel and I were just pre-arguing this before today, and that's part of the whole situation. Why don't you, so you don't run out of time, why don't you go back to your first one and work on down to the second one? I mean, in the order that you were going to argue. In the order I was going to argue? Yeah. I'm going to argue the legal one first and get that out of the way. But I think that that becomes, I know that's more of a policy type thing, perhaps, or a philosophical, but to me that's a problem. It's, as I told counsel and I were discussing before the argument, it's the federal court's version of habitual offender. That courts are able to grasp out of the cloud this information or these other things that are supposedly related to the crime for which you're not charged. But the Supreme Court has blessed this. You get sentenced based on relevant conduct proven to a preponderance if you choose to plea. You can say it's unfair, that's what was said at the sentencing, but you've got to give us a case. I understand. And I can't, well, there can always be, there has to be a first, right? And this could be the first. I thought you were going to say the Brooks decision, we have to decide what was the object of the gun offense, the 924-0. And here the object has to be robbery or drugs. And I agree with that, too. You agree with that. Okay. Whatever it takes to tack off seven levels, I'll agree with Your Honor, because this is very difficult in this case. And very difficult for Mr. Moore to have, in good faith, enter a plea. Yeah, but the guilty plea, the factual basis itself talks about the full signed one, not the abbreviated one read in the rearrangement. But it specifically talks about all the shooting. This was a giant gun battle in a hotel. Eighty rounds. Three people shot. Your client actually shoots someone. It's his own confederate in the elevator, but he does. I mean, I can see Judge LaMelle making the fact determination that therefore he came intending to shoot. He's going to rob his rival drug gang. And they actually do shoot. How will you reverse that factually? Factually it is very difficult. I mean, I'll admit that. It is factually difficult. But obviously . . . So you're saying it's unfair, but that's the legal structure we have. I'm just being aggressive, so push back. But then when I say, well, then you're stuck with the factual arrangement that we've got, uncharged conduct proved to be a preponderance for cross-references, that's the Santiago decision, you're saying it's pretty hard for us to say clear error. Why doesn't that end your argument? Because he was not charged. There was no proof. I understand that the plea agreement did reference, or my client did reference, in the statement that he may have participated in some shooting. But where does the government prove the premeditation? Does this automatically make it premeditation just because . . . If I'm able to have snuck something in court this morning and pull it out to use it some sort of way, can you assume I'm premeditated to have done that? Or maybe you got me mad with the question, and I just reacted. I'm worried, Mr. Plazon, when I saw the black coming from underneath your sleeve there. Oh, it's . . . I see now, but I was hoping you didn't have demonstrative evidence to try to make this argument. My opponent has one on the opposite sleeve, so we're balancing the . . . Well, you pulled your arm out, though, as you were uttering the words. If someone had sneaked something past, it's dirty. I'm trying to come up with some example, Your Honor. I'm relieved, though . . . That would show immediate action as compared to premeditation. But the sentence you have problems with is Judge Lammel's fact finding, quote, the victims were intentionally shot with malice aforethought during the course of the robbery and the drug trafficking. Yes. He zeroed right in on this issue and found specific intent. I understand that. I disagree with that. I don't think the government proved, and you said the Brooks case, and it's cited in my brief, and it's actually in my notes, and Section 8 cannot be applied unless the government can establish premeditation to the murders. Mere malice aforethought is not sufficient to require the cross reference. It's a fact determination, and we know the standard. So the only way you can get from underneath that, you have to show that that factual determination is permeated by, quote, legal error, close quote, right? That's the only way you're going to get out from underneath, because we're not going to substitute our judgment on the facts. So the way you torpedoed, you'd have to show us that that fact determination is legally defective, right, either based on statute or a case. And so I guess that's your argument about the premeditation. I'm just trying to get to it. We look at the facts. It's a tough slug, right? Extremely tough. All right. So what's the legal shot you're taking, case-wise, or not the policy piece, but, I mean, what cases at least get you in the outer circle of the bullseye, if it doesn't get you in the middle, but at least get you to take the Olympics, you know, for example? I mean, what gets you on the target ring with some kind of points here? This case. Okay. This will be the first. Okay. You have to start somewhere. Okay. Why did your client move to withdraw the guilty plea? I didn't represent him at trial, Your Honor. I'm a CJA. Once you see the PSR is going to give the seven levels. Right. You might say, I didn't mean to bargain for that. I thought I wasn't going to be. You know, I think it goes a lot to what I heard at the end of the previous argument. People enter a plea, and then lo and behold comes forward all of these other relevant conduct issues or probation issues, and then, you know, maybe I want to withdraw my plea, and there's not a whole lot on that, or that's a difficult issue in itself. Did the court say, well, you know, we're not going to really let you withdraw your plea? Assuming we agreed with you or assuming I agreed with you, I'm still trying to figure out how to get there. If you say it's this case based on what's briefed here, what's in front of us, et cetera, you know, what would our holding be that this determination, though factual, is a violation of the Eighth Amendment? I'm still trying to get to what's . . . we can't just say it. I mean, the ink wouldn't be dry on it before one of our colleagues would flag it. I mean, the ink wouldn't . . . I'm serious. Yeah, I mean, you know, the ink wouldn't be dry on it, so I'm not being facetious. I'm just trying to say it's one thing to say it, but I'm saying what would the legal piece . . . would it be that it's a violation of the Eighth Amendment, you know, that it's school and unusual, whether they're not charged with premeditation, et cetera, et cetera. I'm just really trying to get what the legal, you know, piece would be, beyond just the argument. I mean, you make the argument. I mean, I get it. I'm just trying to see, you know, even if we wanted to. I mean, I put that in brackets. I'm just saying how to articulate that on this record it was legal error, constitutionally or statutorily, for the district court to make this fact determination. You follow me? Your Honor, I'm doing my best to answer you. I know you are. I know you are. And I think I tried to articulate in brief, as best possible, how to get around that. Let me just say . . . And it's extremely . . . I do agree with you, it's extremely difficult. Would your argument be that the legal error is of constitutional import or statutory import? May I frame it that way? Well, I would agree that it's probably constitutional import because what it does is it effectively . . . And I know the Supreme Court has said what it said, but it effectively allows someone who comes before you or before a judge, either one of you, I'll sit on the bench, and say, I'm going to confess, I'm pleading, I'm confessing to my improper conduct. Here's my plea. And then suddenly I'm bombarded with the fact that you're pulling the conduct from other individuals or you're saying that I did this. And there is the minimal of law that says an attempted Hobbs Act robbery is not a crime of violence. So there in itself, how do you balance the fact that if it's not a crime of violence, you're going to say that there was a shootout of 80 bullets? There were seven or eight. It was 80. No, no, no. There were seven or eight other defendants. This case . . . No, I understand. No, I'm asking you a question. This case has spun off multiple appeals. Yes. Did all the defendants that charged into the room or tried to get into the room, did they all get the attempted murder enhancement? Do you know that, just as a matter of fact? I'm not aware of that. I know Mr. Santiago did because he admitted, and I've got that in my notes, Mr. Santiago admitted to the use of guns to protect drugs and drug proceeds. You don't dispute the video showing that Mr. Moore was determined to have shot using the gun, albeit running, in the elevator. You don't dispute that. I can't dispute any of the evidence that was presented at court. I think the trial attorney did the best he could to articulate as to why it didn't apply, and I'm trying to take it from him and go one step further on the appeal, because I think there's some merit to this argument that he's getting punished more than sufficient. I mean, even the government . . . You see, I guess what kind of caught my attention, too, is in the . . . real quickly, in sentencing memorandums to the trial court, even the government admitted, as I put in my brief, that the sentence without the seven levels would be sufficient for them. Count three was a consecutive ten. We're talking about . . . I'm not disputing that. Yeah, but count four was concurrent with count one, the Hobbs Act. Yes, yes. Was the Hobbs Act separate range enhanced with the cross-reference two? Hobbs and . . . one and two were put together. I know one and two, but we're talking about count four. I guess I'm wondering harmlessness. In other words, we're talking a great deal about whether there's an appropriate cross-reference on count four, but that sentence was concurrent with the Hobbs Act count one. Correct. Was that range also enhanced by virtue of the attempted murder? Do you understand my question? I believe so. Okay. And I'm out of time. No, you're not. I just gave you two. You gave me two more minutes? Yes. Okay. I don't have them. And I'm not arguing the concurrent. I mean the consecutive part. I understand that. I'm arguing that the main sentence, the initial sentence . . . On one and four. Yes, yes. That got him 200 and some odd months was calculated. He got 210 plus the 120. I'm not arguing the 120. I agree with you on that one. It's the 210. Give me some additional time because we stayed on that one in case . . . But in brief, the government admitted that in sentencing memorandum, the court wrote . . . . . . admitted it would lead to a range of 108 to 135 plus the 120. It could live with that. But we wound up with the 210 because adding on all of these other crimes and so forth and so on. I guess that stuck with me. And I guess what also sticks with me is the cases that have come out that said an attempted Hobbs Act is not a crime of violence on one hand. Yet, we're saying on another hand, we're going to bump them up seven levels because of all of this violence. How do we balance that? And that, Judge Stewart, may be the issue you have to decide. How do you balance the attempted Hobbs Act saying no violence? It's not a crime of violence. I think we all agree on that. There's case . . . And then we're adding seven levels because of violence. I don't know how you can balance that. And since lenity goes to the defendant, he should get the lenity of the nonviolence. How about reserve the balance? Thank you, Your Honor.  You still have your five minutes rebuttal. All right, let's hear from the government. Mr. Copes? You brought the whole group for reinforcements or Mr. Pleasant just strikes enough fear to the government that you've got to have four people over here on this argument? Mr. Pleasant, you're a big guy over there in that chair. It took four of them to show up. He does. This is my new team, and some of them are more experienced with guideline applications as well because I'm an appellate . . . Oh, no, no. No worries. That was just a friendly gratuity. That's all. But I am very . . . Not something you have to respond to. Mr. Pleasant . . . All right. Ma'am, you're up. All right. Your Honors, I just want to go through the basic analysis that the government, the district court, the PSR, as adopted by the district court, went through. And that is, this is, as Mr. Pleasant said, this is a 2K firearms guideline because the operative count was conspiracy to use firearms in furtherance of the drug trafficking offense, which was to rob these drug dealers of their drugs and resell them on the street as part of the drug trafficking conspiracy. And so, the court looked to 2K2.1, and it looked to the cross-reference in 2K2.1, 2K2.1C1A, and it says, use the cross-reference to 2X1.1 when the firearm is used in connection with or attempted connection with another offense. And then you go to 2X, the cross-reference, 2XC.1 for attempts, and it expressly covers 2A2.1 if the court finds by a reasonable certainty, which Judge LaMalve specifically did. You can see his findings beginning at page 297 to 303, but his reasonable certainty finding is at 301 to 302. So, you get to the 2.1A1 attempted murder guideline, which directs the court to use the 18U.S.C. 1111 first degree murder guideline if the object of the offense would have constituted first degree murder. And that happened here two ways. The first was discussed more in sentencing, and that was if someone had died, if they would have died as 2A2.1 contemplates, then this would have been a felony murder under 1111 because it happened in the course of a robbery. It also, as probation in responding to the concerns in its PSR addendum, talks about how premeditation also applies. And in the brief, we tried to go through each step of the way where there was time for cool mind reflection and conscious choice, beginning with going to the house in New Orleans East and actually planning to bring semi-automatic weapons to the robbery. As I see this case, the question, as you described it, is whether or not the gun was used in connection with another offense. And then the difficulty legally is, what is the other offense? And would you agree with the Brooks decision that we were talking about earlier that we have to decide what was the object of his bringing his gun? Was he coming to rob? Was he coming to do his drug deal? Or was he coming to do something that the government never charged him with doing, which was to murder someone? Well, taking that backwards, Your Honor, first off, the government does not need to charge an offense in order for it to be covered by 2A2.1. You used the word object, too. What is the object and the goal of the 924-0 gun offense? And you charge that he was coming to rob, and you charge that he was coming with a gun connected to drug trafficking. But there is no charge, putting him on notice when he pleads, that he's actually going to get sentenced on murder. And there wasn't ñ neither was that the case in this court's cases in Munoz, which was premeditated, in Burden, which was on plain error, but premeditated, and in the ñ Okay. So I'm just going to interrupt just with time. I agree. That's another circuit case. The law, as you've just described, is that you can get to sentencing, and lo and behold, you go into prison for something you never pled to. But you would agree, at that point, the court has to find, at least not beyond a reasonable doubt, but to a preponderance, all the elements of that. Yes. And felony murder. Well, I'm going to ask you, are you agreeing that in order to put someone in jail for murder, the government's got to prove and the district court's got to find that they specifically intended to murder? Do you agree with that? Of the specific intent. The premeditation. Yes. The premeditation is one part of 1111, but there's three different ways to satisfy 1111. The first one is premeditation, deliberation. Was that found here? That was when the district court adopted. That's a yes or no question. Was that found here? Yes, by the district court. Okay. So you win there at the highest level of proof. So my question is, are you also arguing independently that someone could be sentenced, like Moore was, with a lesser scienter? Because that would discomfort me, and I don't see circuit law. So I really want to know what the government position is. Okay. So the other provision relevant here of 1111 requires malice of forethought, which this court, unlike some other circuits, has defined under Shaw and well-established authority that malice of forethought can be extremely reckless conduct. Are you defending that? In other words, you want us to publish a decision that conflicts with the consensus of all other circuits, or am I wrong with my premise? In other words, I know what our unpublished law says, but I want to know whether the government wants to defend that and whether you would admit, if we wrote that, we would be splitting with six, seven other circuits. Are you defending a lesser scienter showing? And if so, do you agree that would create a split with a lot of circuits? Your Honor, in the Shaw case. No, it's not what's in the case. Is the government suggesting we can affirm this sentence with a lesser state of mind as to more, not specific intent to kill? I know Judge LaMalle found specific intent. You could win on that factually, but I really want to know whether the government is suggesting to us that we should say there's some lesser proof. That's a yes or no question. No, and I have a reason why. Okay. And that is based on the language of the guideline. This is not a conviction. This is a sentencing issue, and for premeditation, you need premeditation, deliberation, cool mind, conscious thought. However, under 1111, it says, first, you need malice of forethought, which in Shaw, which is a published case and some other published cases, has been defined as either intent to kill or serious bodily injury or extreme recklessness and wanton disregard. And I have not seen a case overruling that definition of malice of forethought. And in Shaw, the court says malice of forethought does not require subjective intent to kill, which is a slightly different way of putting it. But I know what Brooks says, but in Brooks, Brooks was distinguishing a number of other courts that said malice of forethought could be based on recklessness and wanton disregard for human life, depraved heart type. There's a whole string cite that the Brooks case disagrees with. It doesn't cite the Fifth Circuit. But there was ample evidence of that. Shaw was a 1983 decision. That predates Braxton? That predates Braxton. But Braxton didn't involve 1111, as I recall. But Braxton's what the other circuits are relying on to say specific intent to kill has to be shown. Well, I mean, Brooks distinguishes a bunch of other circuit cases by saying that—now, I may be quibbling over the wrong thing. I'm talking about the definition of malice of forethought. And when you look at 1111 and this court's decisions, that is the—anything from recklessness forward. But then— What are you saying—to win, what are you saying we should write? Are you saying that Judge Lamel found the highest level of scienter intentionality premeditation based on facts that allow for that inference? Yes. Or are you saying the law permits us to find only that Moore was reckless? And if so, what post-Braxton published authority do you have anywhere in the country? The Burden case, Your Honor, because— The Burden case. The two cases are distinguished—I mean, the two parts, and there's a third one about torture, but the two parts of 1111 distinguish between felony murder and premeditated murder. And if it constituted felony murder during—and specifically during a robbery under 1111, that also is murder in the first degree, and that also falls under 2A2.1. And so it's for felony murder, and the conviction for first-degree murder under that, the intent is robbery where somebody is killed. And in Jackson, which is an unpublished case, but it's very similar to ours, it's another felony murder which came under 2A2.1. Jackson was a—like a lot of these cases, starts with felon in possession, and that's what's charged, and nothing else. There's no other—there's no charge of attempted murder. There's no charge of first-degree murder. They're charged with felon in possession. Then you look to the 2K2.1C1A cross-reference, and then 2S1.1 that takes you to 2A2.1. And this is—these are guideline issues that are not necessarily the same as, for example, an attempt—just a bare attempt crime charged in state court, I guess, because there's no attempt—there's no federal attempt statute except in very limited circumstances such as something that happens offshore. But when you look at Jackson, it is—it's very similar because the—there was a dice game, and this came out of our office. So there's a dice game, and Jackson and Doakes lost. They're walking away from the dice game. Jackson hands Doakes a gun, and Doakes—a lot of this is on video, but not all of it—Doakes shoots the dice game winner, and then Jackson robs him. And Jackson was—the guideline that was applied for Jackson was 2A2.1A1 for first-degree murder under 1111 because it was a robbery, which is specifically listed under 1111. And had that robbery resulted in death—and the language from 2A2.1 is would have resulted in death and would have resulted in first-degree murder under 1111—then you have felony murder, and that's been affirmed by this court. Granted, it is an unpublished opinion, but there's also evidence that the district court found that's supported by every single word—well, okay, that's a bit of an exaggeration, Your Honor. I apologize. Everything in the factual basis supports both. It would support specific intent if it applies. It supports premeditated murder because of each step of the way, the attempt for cool-mind reflection. When you're going and you're lining up in front of a hotel room, and you, by plan, have brought your semi-automatic firearm, and you are lined up on the left side along with two others. One pushes his way into the room. The others shoot into the room. And, in fact, in the factual basis at page 163, Moore admitted that all six, including him, walked up close to the door and started shooting at the individuals inside the room. And they returned fire. And that is, in itself, sufficient, but if you look at page 166 of the factual basis, it goes through all of the elements necessary to find that they did the planning, they brought their semi-automatics, they planned to rob the drug dealers who they knew had big guns. This was discussed at sentencing because they'd seen them. There were only four of the buyers. There were seven drug dealers in one hotel room, which Moore admits shooting at the individuals inside that room. And so they add Moore and Donnell, perhaps, and this is an inference, but to increase their numbers and the number of guns they had. And then they just, each step of the way, and we go through that in our brief, you can find places where Moore could have said, gee, I'm carrying my semi-automatic weapon to rob these drug dealers, other drugs, to sell on the street, and I know they have big guns. And as Judge Zimmel found, while guns could be used to intimidate in these circumstances, common sense tells you that he brought this semi-automatic, at least with knowledge he might need to use it, but even more so because they already knew that the drug dealers in that hotel room, the seven in one hotel room that he shot at individually, he said he shot at the individuals, that's sufficient under either premeditation or felony murder, which is discussed a lot at sentencing. When you say, I don't see in Burden, just looking at it, that that's a felony murder case that rests on scienter less than premeditation of specific intent. So what's your best post-Braxton published authority anywhere that allows... Jackson. Jackson's not published. Oh, I'm sorry, Your Honor. Published? Because, of course, six or seven circuits have addressed this issue, and no one wants to be putting people in jail for conduct that they didn't plead to that wasn't charged. So if people will get sentenced appropriately, we've got to make sure that the elements are found even to a lesser standard. As I saw this case, Judge Zimmel met the higher standard. He drew an inference of specific intent. But what I'm really trying to understand is that the government would want to affirm, based on unpublished Fifth Circuit law, that would draw us into conflict with multiple circuits. So I'm asking you, do you have any published authority that justifies a sentence under attempted murder for less than specific intent? That's what felony... Do you have any authority? Your Honor, I... That justifies a cross-reference sentence. I have cited other cases from other circuits, but the very definition of felony murder is you have intent to rob and you shoot somebody. I mean, that's... So what's wrong with the second and the third and the other circuits that have said it's got to be specific intent? I don't believe they were addressing felony murder, Your Honor. But I will... Your Honor, I will go back. No, no, no, no. I think that's... Because I apologize. I focused on the unpublished decision in Jackson, plus other cases from other circuits. But they were unpublished, too. And so I may be missing something entirely. And if I am, I apologize and I will go back and I can file something else. But my biggest point is that Judge LaMelle, over 70 pages of sentencing transcript, he took the evidence, he tested it, he asked questions of the agent in the videos, and there was cross-examination. Plus, he tested the arguments all the way through. And plus, the PSR addendum specifically addresses the premeditation issue, and the district court adopted in full the PSR in its statement of reasons at 423. Your Honor, I'm sorry. I've gone over my time. I apologize for that. No problem. You're responding to the question. That's why we have you here. Thank you, Your Honors. All right. Thank you. All right. Mr. Blazant, you have your rebuttal time. Real quick. I think you made an interesting point, Judge Higginson. We want to punish people for what they plead to. That's what you said a few minutes ago, unless I'm misquoting you. And not for something else. And that's the problem in this case. There's too much else. And you asked under 924-0, the gun offense, what was the object of the purpose of the guns? Was it to rob, the drugs, or for something never charged? And if you look at the sentence, it becomes something never charged. The alleged murders. Yeah, but you signed a factual basis that describes all the shooting and the people shot. Do you have a response to the legal points that I was pressing the government with? In other words, have you read the unpublished Fifth Circuit cases that are drawing the distinction that they point out that our court alone may have a lesser standard that would suffice to support the felony murder? Have you read those? Are you ready to respond? No, Your Honor. I don't see it. I mean, the difficulty for you, but disagree with me, is whatever the intricacies of that argument, Judge LaMelle made a factual finding at the highest level of SIENTA. Yes. So, obviously, if you find the highest level, the lower levels are inferred to be within that range. I mean, it's basic logic, unfortunately, from my point of view. Now, if you want to flip it around, that's exactly what I'm trying to do, is flip it to say that you don't . . . It just bothers me, and again, I don't want to go into policy and I'll wrap it up, that so much of this case is . . . The defendant signed, initialed, or wrote. The government presented no evidence. I mean, you get the videos and those type things, but no evidence of the premeditation that Mr. Moore brought a gun to attempt six or seven murders. I mean, Judge LaMelle goes through it. The guy agrees he gets recruited to go to a gun battle against a rival drug bank . . . Well, he gets . . . . . . with a gun, and then, as he's escaping, he's firing the gun, and he even hits somebody. How is . . . I mean, I don't see that it's difficult to say that, therefore, he had formed the actual intent he would shoot to kill. I've seen a lot worse, where the uncharged conduct comes up with more of a surprise. I think LaMelle just . . . he went through it and said, this is an inference I draw. Then, in those type situations, I guess, from my perspective, I want to see it in the indictment. I want to see the government come forth and say . . . You know, the government came forth and admitted it was an attempted Hobbs robbery. The government came forth and agreed to strike through all of the documents that he was not being charged with a crime of violence. That is an admission, on their part, that he was not being charged with a crime of violence. So, let's sentence him . . . Many defendants plead straight up, and it's a bare-bones indictment. They have no idea what's going to come in sentencing. This one, with counsel, he pleads to an extensive factual basis, describing the entire conspiracy. He knew what the conduct was, the orbit of conduct, and he said, I'll plead guilty to it. I understand, but none of it said murder, and none of it said attempted murder. I mean, that's the bottom line. It doesn't say that, but I mean, the videos and this whole scenario, it's like gunfight at the OK Corral. I mean, it's off the chain, and so there's a factual inference from all these guns, all this shooting, knowing why you showed up. I get your point, but, I mean, this fact record is just out there, as opposed to, as you say, a condition that shows up from nowhere. But, I mean, it's facts here, just the shooting, the get-rid-of-the-gang and all that. I mean, it's kind of, it's out there, but anyway . . . I'll leave it that way, and ask you to reverse, and ask you to spend a lot of time reading Brooks, and I think Brooks is my best shot for any type of relief. Well, you make an able point, and a good segue for me to say to you, Mr. Poisson, you are CJA panel for appointed counsel, and it can't be overstated, the appreciation that the panel and the court has for you and those similarly situated who take these cases on to ably brief, and here you had to come and make argument to the panel in a case that you didn't represent to defend it below. You take the case, you know, as you find it. So, we really appreciate the able and eloquent advocacy on behalf of the client in this case, but your willingness to continue to take these cases, because, because, and to make points despite egregious facts, but really, really representing what able counsel do is to make great arguments on behalf of their clients. So, the panel thanks you, we appreciate you, and those similarly situated who take the cases. And I do appreciate every time I come hearing that from this court. I do. Thank you. Thank you. All right. Thank you to you, and thank you to the government. We appreciate the briefing and arguments. It's an interesting case, and there's a lot going on. But, again, that's why we set this case for oral argument. You know, it's a lot going on, but we will sift through it, and we'll get it decided post-haste. All right. All right. Thank you.